## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| ELIZABETH GOMES, EVA M. CONNORS, JENNIFER BOWEN, KATISHA SHOULDERS, KENNETH N. MARENGA, PAMELA PRISCO CARPENTER, STEVEN PETERS, ZHANNA KARP, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET CORPORATION, STATE STREET BANK & TRUST COMPANY, NORTH AMERICA REGIONAL BENEFITS COMMITTEE OF STATE STREET CORPORATION, INVESTMENT COMMITTEE OF STATE STREET CORPORATION, and JANE and JOHN DOES 1-20,<br><br>Defendants. | Civil Action No. 1:21-cv-10863-MLW |

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES, ADMINISTRATIVE EXPENSES, AND CASE CONTRIBUTION AWARD

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ..................................................................................................... 3

I.     CLASS COUNSEL IS ENTITLED TO AN AWARD OF REASONABLE
ATTORNEYS' FEES ................................................................................ 3

II.    THE ATTORNEYS' FEES REQUESTED ARE REASONABLE UNDER BOTH
A PERCENTAGE-OF-THE FUND CALCULATION AND USING A
LODESTAR CROSS-CHECK ...................................................................... 3

III.   FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM
THAT THE REQUESTED FEE IS FAIR AND REASONABLE .......................... 5

       A.    The Amount of the Recovery and the Number of Class Members Who
Will Benefit from the Settlement Support the Requested Fee .............. 5

       B.    The Skill and Experience of Counsel Support the Requested Fee......... 6

       C.    The Complexity and Duration of the Litigation Support the Requested Fee ........ 7

       D.    The Risk of Non-Payment Was Extremely High in This Case.............. 8

       E.    The Amount of Time Devoted to the Litigation by Class Counsel Supports
the Requested Fee ........................................................................ 9

       F.    Awards in Similar Cases Support the Requested Fee ........................... 9

       G.    Public Policy Considerations Support the Requested Fee ................... 10

       H.    The Endorsement of the Named Plaintiff Families and the Reaction of the
Class Support the Requested Fee ...................................................... 10

IV.   THE EXPENSES INCURRED ARE REASONABLE AND WERE
NECESSARY TO ACHIEVE THE BENEFIT OBTAINED........................... 11

CONCLUSION................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
    2012 WL 1981505 (S.D.N.Y. June 1, 2012) .................................................................... 12

*Barbosa v. Cargill Meat Sols. Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013) .................................................................................... 12

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. Apr. 29, 2013) ...................................................................... 13

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass. 2015) ........................................................................... 6, 11

*Blum v. Stenson*,
    465 U.S. 886 (1984) ......................................................................................................... 3

*In re Comdisco Sec. Litig.*,
    150 F. Supp. 2d 943 (N.D. Ill. 2001) ............................................................................... 4

*In re Compact Disc Min. Adver. Price Antitrust Litig.*,
    292 F. Supp. 2d 184 (D. Me. 2003) ............................................................................... 13

*Crandall v. PTC Inc.*,
    2017 U.S. Dist. LEXIS 217581 (D. Mass. July 14, 2017) ................................................ 4

*In re Fidelity/Micron Sec. Litig.*,
    167 F.3d 735 (1st Cir. 1999) ......................................................................................... 11

*Gascho v. Global Fitness Holdings*,
    822 F.3d 269 (6th Cir. 2016) ......................................................................................... 10

*Gastronomical Workers Union Local 610 v. Dorado Beach*,
    617 F.3d 54 (1st Cir. 2010) ............................................................................................. 3

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................... 12

*Hardt v. Reliance Standard Life Ins. Co.*,
    130 S. Ct. 2149 (2010) ..................................................................................................... 3

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ......................................................................................................... 5

*Hill v. State Street Corp.*,
    2015 WL 127728 (D. Mass. Jan. 8, 2015) ................................................................................... *passim*

*Krueger v. Ameriprise*,
    2015 WL 4246879 (D. Minn. July 13, 2015) ................................................................................. 7

*In re Lupron Marketing and Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ...................................................................................................... 8

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................................... 7

*Martin v. Caterpillar Inc.*,
    2010 WL 11614985 (C.D. Ill. Sept. 10, 2010) .............................................................................. 4

*Medoff v. CVS Caremark Corp.*,
    2016 WL 632238 (D.R.I. Feb. 17, 2016) ................................................................................... 5, 8

*Moore v. Aerotek, Inc.*,
    2017 WL 2838148 (S.D. Ohio June 30, 2017) ............................................................................ 10

*In re Polyurethane Foam Antitrust Litig.*,
    2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ............................................................................ 10

*In re Puerto Rican Cabotage Antitrust Litig.*,
    815 F. Supp. 2d 448 (D.P.R. 2011) ............................................................................................... 5

*In re Relafen Antitrust Litig .*,
    231 F.R.D. 52 (D. Mass. 2005) ......................................................................................... 4, 5, 9, 13

*Roberts v. TJX Companies, Inc.*,
    2016 WL 8677312 (D. Mass. Sept. 30, 2016) ........................................................................... 4, 8

*Savani v. URS Prof Solutions LLC*,
    121 F. Supp. 3d 564 (D.S.C. 2015) ............................................................................................... 7

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ............................................................................... 6

*Sheppard v. Consol. Edison Co. of New York*,
    2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) .............................................................................. 13

*In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*,
    268 F. Supp. 2d 907 (N.D. Ohio 2003) ......................................................................................... 8

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995) ....................................................................................................... 2, 3

*In re TIX Cos. Retail Sec. Breach Litig.*,
    584 F. Supp. 2d 395 (D. Mass. 2008) ........................................................................................... 5

*In re Tyco Int'l Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. Dec. 19, 2007) ................................................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................................. 4

*Will v. General Dynamics Corp.*,
    2010 WL 4818174 (S.D. Ill. Nov. 2, 2010) ...................................................................... 4

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ............................................................................................. 4

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................................ 6

**Statutes**

29 U.S.C. §1132 (g)(1) ...................................................................................................... 3

Employee Retirement Income Security Act of 1974 ........................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23(h) ..................................................................................................... 1, 3

Fed. R. Civ. P. 54(d)(2) ...................................................................................................... 1

Local Rule 7.1(A)(2) ......................................................................................................... 16

Class Counsel, Garrett W. Wotkyns of Scott and Scott Attorneys at Law ("Class Counsel") respectfully submits this memorandum of law in support of its application, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, for (i) an award of attorneys' fees in the amount of $1,433,333.33 (one-third of the $4,300,000.00 Gross Settlement Amount) and litigation costs in the amount of $115,030.38; (ii) an award of up to $50,000 for administrative expenses including $35,000 in settlement administration costs and $15,000 in independent fiduciary costs; and (iii) payment of $40,000 in total to be split evenly between named Plaintiffs Elizabeth Gomes, Eva M. Connors, Jennifer Bowen, Katisha Shoulders, Kenneth N. Marenga, Pamela Prisco Carpenter, Steven Peters, and Zhanna Karp (collectively, "Plaintiffs").

Defendants State Street Corporation, State Street Bank and Trust Company, North America Regional Benefits Committee of State Street Corporation, Investment Committee of State Street Corporation, and Jane and John Does 1-20 ("Defendants") take no position on this application.

## PRELIMINARY STATEMENT

As discussed below, the requested distributions are appropriate and reasonable in comparison to awards in similar cases. Class Counsel's requested one-third fee is authorized under the Settlement, *see* Settlement Agreement, *Dkt. 86-2*, §11.1, and is consistent with the amount typically awarded in complex ERISA cases such as this. Likewise, the proposed $40,000 service award is also authorized under the Settlement, *see id,* §11.2.2, and well within the bounds of what has been approved in other ERISA cases. Finally, the requested litigation costs and expenses are typical and reasonable in comparison to other cases. Accordingly, Plaintiffs and Class Counsel respectfully request that the Court approve the requested distributions. As of the date of this motion, no Class Member has objected to the proposed distributions. Defendants therefore take no position directly or indirectly on Class Counsel's application for attorneys' fees and expenses,

because Class Counsel has not requested an award of attorneys' fees higher than one-third of the Settlement Amount, totaling $1,433,333.33, and has not requested case contribution awards of more than $5,000.  *Id.*, §§11.1-11.2.

Class Counsel's efforts to date have been without compensation of any kind for their prosecution of this case, which required them to devote over 1700 hours of billable time, and risk $115,030.38 in litigation expenses.  *See Declaration of Daryl Scott in Support of Motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives Service Awards* ("Scott Decl. for Attorneys' Fees'"), ¶ 4; *Declaration of Jamie L. Falgout in Support of Motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives Service Awards* ("Falgout Decl. for Attorneys' Fees'"), ¶ 4.  The recovery of any fees or expenses has been wholly contingent upon the result achieved.  Thus, in accordance with fees awarded in similar actions in this Circuit and throughout the country, Class Counsel seeks $1,433,333.33 in fees, $115,030.38 in expenses, and up to $50,000 in administrative expenses for the Settlement Administrator ($35,000) and the Independent Fiduciary ($15,000).  The fee requested also passes a lodestar crosscheck for reasonableness, carrying a lodestar multiplier of .90.  *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 308 (1st Cir. 1995) ("Given the peculiarities of common fund cases and the fact that each method, in its own way, offers particular advantages, we believe the approach of choice is to accord the district court discretion to use whichever method, POF or lodestar, best fits the individual case.  We so hold, recognizing that the discretion we have described may, at times, involve using a combination of both methods when appropriate.").  Under either method, the fee requested by Plaintiffs is reasonable.

**ARGUMENT**

## I.   CLASS COUNSEL IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES

F.R.C.P. Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

This matter was brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), which provides an independent avenue for fees under 29 U.S.C. §1132 (g)(1) merits.'" *Hardt v. Reliance Standard Life Ins. Co.,* 130 S. Ct. 2149 (2010).  "The statutory standard is satisfied as long as the merits outcome produces some meaningful benefit for the fee-seeker." *Gastronomical Workers Union Local 610 v. Dorado Beach,* 617 F.3d 54, 66 (1st Cir. 2010) (citing *Hardt,* 130 S. Ct. at 2157).

## II.   THE ATTORNEYS' FEES REQUESTED ARE REASONABLE UNDER BOTH A PERCENTAGE-OF-THE FUND CALCULATION AND USING A LODESTAR CROSS-CHECK

The Supreme Court has endorsed the percentage method, stating that "under the common fund doctrine ... a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984).  The First Circuit also endorses this method in common fund cases, noting that it is the prevailing method and that it "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." *In re Thirteen Appeals,* 56 F.3d at 308.  Indeed, the percentage method "appropriately aligns the interests of the class with the interests of the class counsel[,] ... is `less burdensome to administer than the lodestar method,' ... `enhances efficiency' and does not create a 'disincentive for the early settlement of cases,'" *Duhaime v. John Hancock Mut. Life Ins.* Co., 989 F. Supp. 375, 377 (D. Mass. 1997) (quoting *Thirteen Appeals,* 56 F.3d at 307); *see also Wal-Mart*

*Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 121 (2d Cir. 2005) (noting method "directly aligns the interests of the class and its counsel"). Here, a common fund was created, so all the advantages discussed above would be achieved.

The Court is not required to perform a lodestar cross-check. *See Williams v. Rohm & Haas Pension Plan,* 658 F.3d 629, 636 (7th Cir. 2011).[1] However, to the extent the Court finds it useful, a lodestar cross-check also supports the requested fee. Here, Class Counsel's lodestar to date $1,592,559.00 which corresponds to a multiplier of .90. *See Scott Decl. for Attorneys' Fees,* ¶4; *Falgout Decl. or Attorneys' Fees,* ¶ 4. These numbers are well within the typical range, and further demonstrates the reasonableness of the requested fee. *See, e.g., In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 82 (D. Mass. 2005) (finding a "multiplier of 2.02" to be "appropriate" based on comparison of cases).

Based on the above, a requested fee of 33-1/3% of a total amount available to the Settlement Class, and representing a lodestar crosscheck of .90, is both reasonable under the Circumstances and well within the typical range of percentage fees awarded in the First Circuit and elsewhere. *Crandall v. PTC Inc.,* 2017 U.S. Dist. LEXIS 217581, at *16 (D. Mass. July 14, 2017) (awarding 33-1/3%); *Roberts v. TJX Companies, Inc.,* 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (awarding 33-1/3%).

---

[1]     *See Will v. General Dynamics Corp.,* 2010 WL 4818174, at *3 (S.D. Ill. Nov. 2, 2010) (describing the use of a lodestar cross-check in common fund cases to be "unnecessary, arbitrary, and potentially counterproductive."); *Martin v. Caterpillar Inc.,* 2010 WL 11614985, at *2, *4 (C.D. Ill. Sept. 10, 2010) (same); *In re Comdisco Sec. Litig.,* 150 F. Supp. 2d 943, 948 n.10 (N.D. Ill. 2001) ("[T]o view the matter through the lens of free market principles, [a lodestar analysis] (with or without a multiplier) is truly unjustified as a matter of logical analysis.".)

III.    **FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE**

While "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable," *In re Relafen Antitrust Litig.,* 231 F.R.D. at 79, courts in this Circuit consider several factors when considering an award of attorneys' fees, including: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any." *Hill v. State Street Corp.,* 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015) (quoting *In re Puerto Rican Cabotage Antitrust Litig.,* 815 F. Supp. 2d 448, 458 (D.P.R. 2011)); *Medoff v. CVS Caremark Corp.,* 2016 WL 632238, at *5 (D.R.I. Feb. 17, 2016) (same).  Courts have also considered the reaction of the class.  *See Hill,* 2015 WL 127728, at *19-*20; *In re TIX Cos. Retail Sec. Breach Litig.,* 584 F. Supp. 2d 395, 401 (D. Mass. 2008) (considering "the reaction of the class members to the settlement and proposed attorneys' fees" as one of the relevant factors).  As set forth below, all of these factors weigh strongly in favor of finding that the requested fee award is reasonable.

A.    **The Amount of the Recovery and the Number of Class Members Who Will Benefit from the Settlement Support the Requested Fee**

Courts consistently have recognized that the result achieved is one of the most important factors to be considered in making a fee award.  *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *see also Puerto Rican Cabotage,* 815 F. Supp. 2d at 458 ("[T]he net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award.").  The results Class Counsel achieved for the Class, while avoiding the necessity and risk of prolonged litigation, are compelling, and include the fact that no claim forms are necessary, with

5

current participants receiving a credit automatically to their individual account and former participants receiving a check in a proportional amount automatically. *Dkts. No. 86-5, 97*.

      **B.**      **The Skill and Experience of Counsel Support the Requested Fee**

      The prosecution and management of a complex ERISA fiduciary litigation requires unique legal skills and abilities with expertise in ERISA and class actions. As demonstrated by Class Counsel's experience, they were perfectly suited to achieve this result. *See Dkt. 86*, *Wotkyns Decl.* ¶¶16-19; 22-26, *Scott Decl. for Attorneys' Fees'* Ex. 3. Class Counsel is an experienced and skilled practitioner in the ERISA and class action fields and has long and successful track records in such cases. *Id.* Its willingness and ability to undertake complex and difficult cases such as this, which are critically important to families recovering hard-earned retirement benefits, and their commitment to this litigation, were valuable to the case and settlement negotiations. *See Hill,* 2015 WL 127728, at *17 (noting plaintiffs' counsel's "experience and expertise contributed to the achievement of the Settlement"); *Bezdek v. Vibram USA Inc.,* 79 F. Supp. 3d 324, 350 (D. Mass. 2015) (finding skill of lawyers "nationally-known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award).

      The quality of the work performed by Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Defendants' attorneys ... consistently put plaintiffs' counsel through the paces. All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion."). Here, Defendants have been represented by highly experienced lawyers from Goodwin Procter LLP, a well-respected national law firm known for their vigorous defense in cases such as this one.

      Notwithstanding this formidable opposition, Class Counsel was still able to settle the action on terms favorable to the Class. *See Schwartz v. TXU Corp.,* 2005 WL 3148350, at *30 (N.D. Tex.

Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). Accordingly, this factor further supports the requested attorneys' fees.

### C. The Complexity and Duration of the Litigation Support the Requested Fee

It is well known that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *See Krueger v. Ameriprise,* 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also In re Marsh ERISA Litig.,* 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty cases.") Handling a complex case such as this requires counsel with specialized skills. *See Savani v. URS Prof Solutions LLC,* 121 F. Supp. 3d 564, 573 (D.S.C. 2015) ("Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate ... class-wide, statutorily-based claims for pension benefits.") In addition to legal expertise, counsel must possess "expertise regarding industry practices." *Kruger,* 2016 WL 6769066, at *3.

To that end, Class Counsel is one of the relatively few firms in the country that have the experience and skills necessary to successfully litigate a complex ERISA action such as this one, having settled numerous ERISA cases over the last several years resulting in tens of millions of dollars in recovery of losses incurred by numerous plaintiffs. *See Dkt.* 86, Wotkyns Decl. ¶¶ 16-19; 22-26; *Scott Decl. Scott Decl. for Attorneys' Fees'* Ex. 3. In short, Class Counsel's experience benefitted the Class throughout the litigation, provided credibility at the bargaining table, and was instrumental in achieving the result that was obtained. This weighs in favor of awarding the fees requested in this case

Accordingly, the challenging legal complexity of this litigation support the conclusion that the requested fee is fair and reasonable in light of the results achieved for the Class.

**D.** **The Risk of Non-Payment Was Extremely High in This Case**

In a case undertaken on a contingent fee basis, the risk of litigation is a key factor in determining an appropriate fee award. *See Roberts,* 2016 WL 8677312, at *13 ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill,* 2015 WL 127728, at *18 ("consider[ing] ... contingency risk in awarding attorneys' fees" when counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class"). Where, as here, Class Counsel "undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel." *CVS,* 2016 WL 632238, at *5; *In re Lupron Marketing and Sales Practices Litig.,* 228 F.R.D. 75, 97 (D. Mass. 2005) ("[A] significant element of risk adheres to any litigation taken to binary adjudication").

Class Counsel took on this case pursuant to a contingency fee agreement because the market for plaintiffs' attorney work in complex class actions requires a contingency fee arrangement. In doing so, Class Counsel assumed a real risk in taking the case, investing time, effort, and money with no guarantee of recovery. This factor weighs in favor of approving the requested fee award. *See, e.g., In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.,* 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003). Counsel faced substantial risks of having the case dismissed or class certification denied, and ultimately not being able to prove that Defendants' allegedly violated their fiduciary duties of prudence and loyalty under ERISA and engaging in the types of transactions prohibited under ERISA. None of this is to say that Plaintiffs lacked confidence in their claims. However, given the risks and costs of litigation, it was reasonable for Plaintiffs to reach a settlement on these terms because in the absence of a settlement, the Class faced a very substantial litigation risk with no guarantee of a greater recovery. Despite these very real risks,

8

Class Counsel pushed forward and worked vigorously to achieve a significant result for the Class. Under these circumstances, the requested fee is fully appropriate.

E.   **The Amount of Time Devoted to the Litigation by Class Counsel Supports the Requested Fee**

The extensive time and effort expended by Class Counsel in prosecuting this litigation and achieving the Settlement also establishes that the requested fee is justified and reasonable. *See Hill,* 2015 WL 127728, at \*19. Class Counsel's declarations detail their efforts in prosecuting Plaintiffs' claims. Courts considering lodestar frequently note that lodestar multiples of 1.0 to 4.0 are generally considered appropriate. *See, e.g., Relafen,* 231 F.R.D. at 82 (approving settlement with 2.02 lodestar multiple). When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l Ltd. Multidistrict Litig.,* 535 F. Supp. 2d 249, 270 (D.N.H. Dec. 19, 2007) (quoting *Thirteen Appeals,* 56 F.3d at 307). In this case, the lodestar method, whether used directly or as a cross check on the percentage method, strongly demonstrates the reasonableness of the requested fee

Here, Class Counsel spent 1716.5 hours of attorney time of prosecuting the litigation. *See Scott Decl. or Attorneys' Fees*, ¶ 4; *Falgout Decl. or Attorneys' Fees*, ¶ 4. Based on counsels' rates, their collective lodestar is $1,592,559.00. *Id.,* Ex. 1. A $1,433,333.33 fee therefore represents a multiplier of .90 to Counsels' lodestar. *Id.* The substantial time and effort devoted to this case was critical in obtaining the favorable result achieved by the Settlement and confirm that the fee request here is reasonable.

F.   **Awards in Similar Cases Support the Requested Fee**

As discussed above, the benefit conferred, $4,300,000.00 recovery, is in line with settlements in other ERISA cases involving similar claims and represents a fair and reasonable

outcome in light of the substantial risks associated with such cases.  Additionally, based on Plaintiffs' estimates, the Gross Settlement Amount represents 12.5% of the total estimated losses ($34,400,000). *See Dkt.* 1, Comp. ¶¶ 85, 92-93.  This is also consistent with other class action settlements.  *See, e.g., In re Polyurethane Foam Antitrust Litig.,* 2015 WL 1639269, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide [damages] is an impressive result in view of these possible trial outcomes.").  This factor therefore weighs in favor of approving the requested attorney fee award.

### G.   Public Policy Considerations Support the Requested Fee

Public policy supports rewarding counsel for prosecuting ERISA fiduciary class actions, and retirement benefit actions more generally." [S]ociety's stake in rewarding attorneys who produce case benefits, militates in favor of an award of the requested attorney's fees." *Karpik,* 2021 WL 757123, at *8.  Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *See Gascho v. Global Fitness Holdings,* 822 F.3d 269, 287 (6th Cir. 2016).  Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases. *See Moore v. Aerotek, Inc.,* 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017).

### H.   The Endorsement of the Named Plaintiff Families and the Reaction of the Class Support the Requested Fee

As set forth in Plaintiffs' Declarations in support of Preliminary Approval of the Settlement, Plaintiffs carefully oversaw the prosecution and resolution of this litigation and had a sound basis for assessing the reasonableness of the fee request. *See Dkts. 87-94*, Bowen *Decl.,* ¶¶

2-3; *Carpenter Decl., ¶¶ 2-3, Connors Decl., ¶¶ 2-3, Gomes Decl., ¶¶ 2-3, Karp Decl., ¶¶ 2-3, Marenga Decl., ¶¶ 2-3, Peters Decl., ¶¶ 2-3, Shoulders Decl., ¶¶ 2-3.*

Furthermore, the reasonableness of the requested fee is supported by the reaction of the Class. *See,* e.g., *Hill,* 2015 WL 127728, at *19 ("The endorsement of the Lead Plaintiffs and the favorable reaction of the class both support approval of the requested fees."). As of May 17, 2024, the Settlement Administrator disseminated notice to all Class Members families. To date, over a month later, no Class Member has objected to any portion of the Settlement. This lends further support to the requested fee. *See, e.g., Bezdek,* 79 F. Supp. 3d at 351 (finding "overwhelmingly positive" reaction of class to settlement and "quite low number of opt-outs" weighed in favor of requested fee).

In sum, Class Counsel respectfully submits that the fee requested here is reasonable and should be awarded.

## IV.   THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's fee application includes a request for payment of litigation expenses that were reasonable and necessary to the prosecution of the litigation. *See, e.g., In re Fidelity/Micron Sec. Litig.,* 167 F.3d 735, 737 (1st Cir. 1999) ("[L]aw firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax.").

Class Counsel's expense request of $115,030.08, and up to $50,000 in administrative expenses for the Settlement Administrator ($35,000) and the Independent Fiduciary ($15,000), is reasonable and should be approved. The vast majority of litigation costs related to non-testifying consultants providing calculations and figures for the Complaint and mediation expenses. *Scott*

11

*Decl. for Atty Fees*, Ex. 2.  These expenses were necessarily incurred in litigation and routinely charged to clients.  Similarly, the cost for email notice and distribution services by the Settlement Administrator are competitive without settlement administrators who assist in these complex ERISA fiduciary class actions.  Last, the $15,000 for the Independent Fiduciary is the customary amount paid to assure that the Settlement is fair from the perspective of the Plan.

Class Counsel respectfully submits that these expenses were reasonably and necessarily incurred in prosecuting this action and should be awarded.  *See, e.g., In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred - which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review - are the type for which the paying, arms' length market reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund."); *see also Anwar v. Fairfield Greenwich Ltd.,* 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Here, Plaintiffs' Counsel seek reimbursement for expenses such as mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type the paying, arms' length market reimburses attorneys.  As such, these expenses shall be reimbursed."); *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 454 (E.D. Cal. 2013) (noting "travel, mediation fees, photocopying, delivery and mail charges" are "routinely reimbursed").

The Court should therefore find that all of these costs and expenses were reasonable and necessary to litigate and settle this case and, therefore, approve the request of $115,030.08 in litigation costs, and up to $50,000 in administrative expenses for the Settlement Administrator ($35,000) and the Independent Fiduciary ($15,000).  The Requested Service Awards to Plaintiffs Are Reasonable.

The Class also was advised that the Plaintiffs would ask the Court for service awards not to exceed a total of $40,000.00 in connection with their participation in the litigation. These proposed service awards are fair and reasonable. Courts have widely recognized that service awards serve an important function in obtaining class-wide relief and encouraging class action settlements. *See, e.g., In re Relafen Antitrust Litig.,* 231 F.R.D. at 82 ("Incentive awards are recognized as serving an important function in promoting class action settlements."); *In re Compact Disc Min. Adver. Price Antitrust Litig.,* 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); *Sheppard v. Consol. Edison Co. of New York,* 2002 WL 2003206, at *5-6 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving service awards). As one court noted: "[s]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 483 (S.D.N.Y. Apr. 29, 2013).

As set forth in their Declarations, Plaintiffs actively and effectively fulfilled their obligations as representatives of the Class, complying with the demands placed upon them, and providing valuable assistance to Class Counsel. *See Dkts. 87-94,* Bowen *Decl.*, ¶¶2-3; *Carpenter Decl.*, ¶¶2-3, *Connors Decl.*, ¶¶2-3, *Gomes Decl.*, ¶¶2-3, *Karp Decl.*, ¶¶2-3, *Marenga Decl.*, ¶¶2-3, *Peters Decl.*, ¶¶2-3, *Shoulders Decl.*, ¶¶2-3. Plaintiffs: (1) located and produced documents relevant to the State Street Plan; (2) searched for ESI in their email accounts; (3) spent hours on phone calls and emails with Class Counsel; (4) reviewed and approved the pleadings; (5) discussed case strategy with Class Counsel; (6) discussed settlement status; and (7) provided input during the mediation process

and participated in negotiation of the Settlement terms.  *See Dkts. 87-94*, Bowen *Decl.*, ¶¶ 2-3; *Carpenter Decl.*, ¶¶ 2-3, *Connors Decl.*, ¶¶ 2-3, *Gomes Decl.*, ¶¶ 2-3, *Karp Decl.*, ¶¶ 2-3, *Marenga Decl.*, ¶¶ 2-3, *Peters Decl.*, ¶¶2-3, *Shoulders Decl.*, ¶¶ 2-3, *Dkt. 86*, *Wotkyns Decl.* ¶¶ 12-13,.  These actions are precisely the type that support reimbursement to representative parties.  Thus, in recognition of Plaintiffs' time and effort expended for the benefit of the Class, Class Counsel respectfully requests a compensatory award of $5,000 each for the named Plaintiffs.

## CONCLUSION

For the reasons set forth above, Class Counsel respectfully requests that the Court enter an Order awarding them fees in the amount of $1,433,333.33, and litigation expenses in the amount of $115,030.08, and up to $50,000 in administrative expenses for the Settlement Administrator ($35,000) and the Independent Fiduciary ($15,000).  Class Counsel further requests that the Court award $5,000 to each of the named Plaintiffs in connection with their representation of the Class.

Dated: June 20, 2024                    Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

/s/ *Garrett W. Wotkyns*
Garrett W. Wotkyns, *admitted pro hac vice*
8068 East Del Acero Drive
Scottsdale, AZ 85258
Telephone: (480) 889-3514
Facsimile: (860) 537-4432
gwotkyns@scott-scott.com

Amanda F. Lawrence (BBO #568737)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street P.O. Box 192 Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
alawrence@scott-scott.com

Joseph C. Peiffer, *admitted pro hac vice*
Daniel J. Carr, *admitted pro hac vice*

14

Kevin P. Conway, *admitted pro hac vice*
Jamie L. Falgout, *admitted pro hac vice*
**PEIFFER WOLF CARR KANE CONWAY & WISE**
1519 Robert C. Blakes Sr. Drive
New Orleans, LA 70130
Telephone: (504) 523-2434
jpieffer@peifferwolf.com dcarr@peifferwolf.com
kconway@peifferwolf.com
jfalgout@peifferwolf.com

*Attorneys for Plaintiffs*

## <u>LOCAL RULE 7.1(A)(2) CERTIFICATE</u>

I hereby certify that on June 19, 2024, counsel for Plaintiffs conferred with Counsel for

Defendants, who assented to this Motion for Attorneys' Fees, Administrative Expenses, and

Case Contribution Awards.

<u>/s/ *Garrett W. Wotkyns*</u>
Garrett W. Wotkyns, *admitted pro hac vice*
*Counsel for Plaintiffs*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2024 I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system to send notification of such filing to all counsel of record.

/s/ *Garrett W. Wotkyns*
Garrett W. Wotkyns, *admitted pro hac vice*

*Counsel for Plaintiffs*

17