```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

ELIZABETH GOMES, EVA M.        )
CONNORS, JENNIFER BOWEN,       )
KATISHA SHOULDERS, KENNETH N.  )
MARENGA, PAMELA PRISCO         )
CARPENTER, STEVEN PETERS,      )
ZHANNA KARP, Individually,     )
and on Behalf of All Others    )
Similarly Situated,            )
     Plaintiffs,               )
                               )
           v.                  )    C.A. No. 21-cv-10863
                               )
STATE STREET CORPORATION,      )
STATE STREET BANK & TRUST      )
COMPANY, NORTH AMERICA         )
REGIONAL BENEFITS COMMITTEE    )
OF STATE STREET CORPORATION,   )
INVESTMENT COMMITTEE OF        )
STATE STREET CORPORATION, and  )
JANE and JOHN DOES 1-20,       )
     Defendants.               )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                         July 30, 2024

I.  BACKGROUND

On April 3, 2024, the court approved preliminarily the parties' proposed class action settlement to resolve this litigation, which arose out of claims that defendants[1] breached

---

[1] "Defendants" are State Street Corporation, State Street Bank & Trust Co., the North America Regional Benefits Committee of State Street Corporation, and the Investment Committee of State Street Corporation.

Plaintiffs Elizabeth Gomes, Eva M. Connors, Jennifer Bowen, Katisha Shoulders, Kenneth N. Marenga, Pameal Prisco Carpenter,

their fiduciary duties to the State Street Salary Savings Program in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). See April 3, 2024 Order (Dkt. No. 97). If the court grants final approval to the proposed settlement, defendants will contribute $4,300,000 to a common fund, which will be distributed among class members after attorneys' fees, litigation costs and expenses, and any contribution awards are deducted. See Settlement Agreement §§1.49, 3.7, 8-11 (Dkt. No. 86-1). The court has scheduled a Fairness Hearing for August 8, 2024, at which time it will consider whether to: (a) approve the Settlement as fair, reasonable, and adequate; (b) enter the proposed Final Approval Order; and (c) approve plaintiffs' motion for attorneys' fees, litigation costs, and contribution awards. See April 3, 2024 Order at 2.

On June 20, 2024, plaintiffs filed a motion for attorneys' fees (Dkt. No. 101), a supporting memorandum of law (Dkt. No. 102), and two declarations (Dkt. Nos. 103, 104). Plaintiffs characterized their attorneys' fees motion as "unopposed" and "assented-to," and they stated in their Rule 7.1(A)(2) Certificate that they had conferred with defendants' counsel regarding the motion on June 19, 2024. See June 20, 2024 Attorneys' Fees Mot. at 4 (Dkt. No. 101). These representations were inaccurate. As

---

Steven Peters, and Zhanna Karp are participants in the State Street Salary Savings Program.

2

defendants stated in a Response filed on June 21, 2024, plaintiffs did not confer with defendants prior to filing their motion and the motion was not assented-to. See Response (Dkt. No. 105). Rather, defendants have agreed not to take a position on any request for attorneys' fees or expenses pursuant to a "clear sailing" provision in the Settlement Agreement. See Settlement Agreement §11.1.

On June 24, 2024, plaintiffs withdrew their attorneys' fees motion and related documents, reporting that the "motion was inadvertently filed as an assented to motion, which was incorrect." Notice of Withdrawal at 1 (Dkt. No. 107). Later that day, plaintiffs refiled their motion for attorneys' fees (Dkt. No. 108), memorandum of law (Dkt. No. 109), and supporting declarations (Dkt. Nos. 110, 111). Plaintiffs revised the attorneys' fees motion to state that defendants took no position on it. See Attorneys' Fees Mot. at 2 (Dkt. No. 108). Otherwise, the refiled documents were materially identical to the originals. See Notice of Withdrawal, at 2.

II.  DISCUSSION

Plaintiffs are represented by lead counsel Scott + Scott and co-counsel Peiffer Wolf Carr Kane Conway and Wise ("Peiffer Wolf") (jointly, "counsel"). Counsel ask the court to award them 33-1/3% of the common fund (i.e., $1,433,333.33) in attorneys' fees. See Attorneys' Fees Mot. at 2.

This court described in detail the legal framework governing common fund attorneys' fees requests in Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co., 512 F.Supp.3d 196, 220-21, 222, 224-25, 238-39, 250, 258 (D. Mass. 2020), aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp., 25 F.4th 55 (1st Cir. 2022). The court also discussed this framework in Arkansas Tchr. Ret. Sys. v. Insulet Corp., 546 F.Supp.3d 11, 16-17 (D. Mass. 2021). In both cases, the court observed that First Circuit courts "'generally award fees in the range of 20-30%, with 25% as the benchmark.'" Insulet Corp., 546 F.Supp.3d at 16 (quoting State St., 512 F.Supp.3d. at 220).

After a court fashions a tentative common fund award, it typically subjects the tentative award to a lodestar cross-check to evaluate whether it is reasonable. See Insulet, 546 F.Supp.3d at 16; State St., 512 F.Supp.3d at 239. "A lodestar is calculated by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate for each attorney." State St., 512 F.Supp.3d at 209 (citing In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 305 (1st Cir. 1995)). "Reasonable rates are calculated according to the prevailing rate in the community." Insulet, 546 F.Supp.3d at 16-17; see State St., 512 F.Supp.3d at 261; Blum v. Stenson, 465 U.S. 886, 895 (1984). "'[T]he rate that private counsel actually charges for her services, while not conclusive, is a

4

reliable indicium of market value.'" State St., 512 F.Supp.3d at 209 (emphasis and brackets in original) (quoting United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 40 (1st Cir. 2008)); see Insulet, 546 F.Supp.3d at 17. In both Insulet and State Street, this court wrote that although it appears to be a standard practice for law firms to characterize the rates attributed to their attorneys as each firm's "regular rates charged for their services," these representations are often untrue. See Insulet, 546 F.Supp.3d at 18; State St., 512 F.Supp.3d at 261.

Fee petitions are not subject to the traditional mode of adversarial testing when attorneys' fees are paid from a common fund. See Insulet, 546 F.Supp.3d at 17 (citing State St., 512 F.Supp.3d at 220). Indeed, defendants have "expressly agree[d] not to take any position with respect to any application for attorneys' fees and expenses" in this case. Settlement Agreement §11.1. Therefore, counsel's fee request is essentially an ex parte proceeding, State St., 512 F.Supp.3d at 221, in which this court must "functio[n] as a quasi-fiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class," In re Fid./Micron Sec. Litig., 167 F.3d 735, 736 (1st Cir. 1999). To fulfill this function, the court must scrutinize counsel's representations made in connection with their fee request, rather than assume that these representations satisfy the requirements of Federal Rule of Civil

Procedure 11. See State St., 512 F.Supp.3d at 261; Insulet, 546 F.Supp.3d at 18.

Scott + Scott served as lead counsel in Insulet. Yet, it has not discussed or cited Insulet or State Street in the memorandum of law accompanying its motion for attorneys' fees. Nor has Scott + Scott explained why its request for an attorneys' fee of 33-1/3% of the common fund is reasonable in view of the standard 20-30% range for common fund awards discussed in State Street and Insulet, and summarized in this Memorandum.

Counsel have calculated a lodestar of $1,592,559 for their work, which they contend supports the reasonableness of their requested fee. See Attorneys' Fees Mem. at 4 (Dkt. No. 109). Specifically, Scott + Scott have calculated a lodestar of $1,428,714, Ex. 1, Scott Decl. (Dkt. No. 110-1), and Peiffer Wolf have calculated a lodestar of $163,845, Ex. 1, Falgout Decl. (Dkt. No. 111-1). In declarations supporting their fee petition, each firm states that "the hourly rates for the attorneys and professional support staff" used in the lodestar calculation are "the same as the regular rates charged for their services in non-contingent matters and/or which have been accepted in other complex or class action litigation, subject to subsequent annual increases." Scott Decl. ¶2 (emphasis added); Falgout Decl. ¶2 (emphasis added).

6

However, neither firm has provided evidence that they have actually charged clients their reported hourly rates. In addition, this representation differs from what Scott + Scott represented to this court when it moved for attorneys' fees in Insulet in 2021. In that case, Scott + Scott represented that its hourly rates were "the same as the regular rates which have been accepted in other securities or shareholder litigation." Insulet, 546 F.Supp.3d at 19. Scott + Scott did not represent, as it does in this matter, that it had actually charged any clients those hourly rates. At the Fairness Hearing in Insulet, Scott + Scott partner William C. Fredericks stated that the firm's practice "is primarily contingent." Fairness Hr'g Tr. 38:20-21, Civ. No. 15-12345 (Dkt. No. 136). This raises the question of whether any or all of the Scott + Scott attorneys included in the fee petition have ever charged a non-contingent client the hourly rate attributed to him or her.

III. ORDER

In view of the foregoing, the court does not possess all of the necessary information to determine whether counsel's requested fee is fair and reasonable. Therefore, it is hereby ORDERED that, by 12:00 noon on August 2, 2024, counsel for Scott + Scott and Peiffer Weiss shall file affidavits stating:

1. Why the requested fee of 33-1/3% of the common fund is reasonable in view of the framework described by this court in

7

Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co., 512 F.Supp.3d 196 (D. Mass. 2020) and Arkansas Tchr. Ret. Sys. v. Insulet Corp., 546 F.Supp.3d 11 (D. Mass. 2021);

    2. Whether, since this action was initiated in 2021, Scott + Scott and/or Peiffer Wolf have billed any clients on an hourly, rather than contingent-fee, basis; and

    3. If Scott + Scott or Peiffer Wolf has billed clients on an hourly basis since the start of this litigation, they shall also state: (a) which of their attorneys who worked on this litigation, if any, billed clients on an hourly basis; (b) how many such clients each attorney billed on an hourly basis; and (c) the hourly rate that each attorney charged.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE